```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
SANKALP BHATNAGAR,                                          :
                                     Plaintiff,             :
                                                            :    20 Civ. 2321 (LGS)
                  -against-                                 :
                                                            :    OPINION AND ORDER
THE PARSONS SCHOOL OF DESIGN AT                             :
THE NEW SCHOOL,                                             :
                                     Defendant.             :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Sankalp Bhatnagar brings this action alleging that Defendant, the Parsons School of Design at the New School, discriminated against him by conferring upon him a Master of Fine Arts degree without permitting him to complete his thesis project in the expanded timeframe he requested. Plaintiff moves for partial summary judgment on his breach of contract claim. Defendant cross-moves for summary judgment on all claims -- the breach of contract claim and the federal, state and city disability discrimination claims. For the reasons set forth below, Plaintiff's motion is denied. Defendant's motion is granted on the federal and breach of contract claims. The Court declines to exercise supplemental jurisdiction over the state and city discrimination claims.

**I.    BACKGROUND**

      The following facts are drawn from the parties' submissions, including their Local Civil Rule 56.1 statements, and are undisputed.

      From fall 2016 through May 2018 Plaintiff was a student in Defendant's graduate Transdisciplinary Design ("TD") Program seeking to receive a Master of Fine Arts degree. The TD Program is a two-year program, and the second year is largely focused on creating a thesis. Plaintiff began working on his thesis at the end of his first year. In the spring of the second

academic year, Plaintiff began experiencing difficulties completing his thesis and changed his thesis topic to an analysis of the TD Program. After completing all four semesters of the two-year program, Plaintiff had not completed his thesis, had three grades of incomplete and left New York for the summer without an approved extension date for completing his thesis and the incomplete courses.

The Dean of the Parsons School of Design Strategies (the "Dean") became directly involved in Plaintiff's situation in late May and early June of his second year. Design Strategies is the school in which the TD Program resides. Plaintiff wished to continue in the program a third academic year. The Dean first set a deadline of July 25, 2018, to submit any additional work, and eventually extended the deadline to August 25, 2018. In July 2018, Plaintiff sent the Dean two pages related to his proposed thesis and nothing further.

On August 31, 2018, Defendant conferred on Plaintiff a Master of Fine Arts degree without a full written thesis. Plaintiff was awarded a grade of C+ for his thesis work. Plaintiff alleges that Defendant breached an implied contract with him and discriminated against him, based on his perceived mental disability, by conferring a degree on him, awarding him a grade of C+ and not extending his participation in the program a third year so that he could finish his thesis.

## II.   STANDARD

### A.  Summary Judgment

Summary judgment is proper where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Electra v. 59 Murray Enters.*, 987 F.3d 233, 248 (2d Cir. 2021). "Only disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Liberty Lobby*, 477 U.S. at 248; *accord Demery v. Extebank Deferred Comp. Plan (b)*, 216 F.3d 283, 286 (2d Cir. 2021).

Courts must construe the evidence and draw all reasonable inferences in the non-moving party's favor. *Wagner v. Chiari & Ilecki, LLP*, 973 F.3d 154, 164 (2d Cir. 2020). When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits and draws all reasonable inferences against the party whose motion is under consideration. *Cayuga Nation v. Tanner*, No. 20 Civ. 1310, 2021 WL 3160077, at *8 (2d Cir. July 27, 2021). When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing to particular parts of materials in the record. Fed. R. Civ. P. 56(c)(1)(A).

### III. DISCUSSION

#### A. ADA Claim

"'A party invoking federal jurisdiction bears the burden of establishing' prudential and constitutional standing." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 39 (2d Cir. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Courts may raise the issue of standing sua sponte. *Id.* "[A] plaintiff must demonstrate standing for each claim he seeks to press . . . ." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (internal quotation marks omitted); *accord Keepers*, 807 F. 3d at 42. Prudential standing includes, inter alia, "the general prohibition on a litigant's raising another person's legal rights." *Keepers*, 807 F.3d at 39 (internal quotation marks omitted). Constitutional standing requires a plaintiff to demonstrate "(1) that [he] has suffered an injury in fact, which is (2) fairly traceable to the challenged action of the defendant, and (3) likely to be redressed by a favorable decision." *Id.* at 38-39 (internal quotation marks omitted).

Plaintiff's ADA claim arises under Title III of the ADA, which limits remedies to injunctive relief. Neither the Complaint nor Plaintiff's memoranda of law identify the specific provision of the ADA under which Plaintiff brings his claim. The Complaint alleges that Defendant Parsons is a "postgraduate private school." Title III of the ADA forbids discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12112(a). Title III of the ADA defines a "postgraduate private school" as a place of public accommodation. 42 U.S.C. § 12181(7)(J). Title III of the ADA provides only for injunctive relief. 42 U.S.C. § 12188(a); 42 U.S.C. § 2000a-3(a); *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004) ("A private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages.").

Plaintiff lacks constitutional standing to bring his ADA claim.[1] The only injunctive relief Plaintiff seeks is an order preventing future discrimination against Defendant's other students. This requested relief does not provide a basis for finding constitutional standing as to Plaintiff's ADA claim. First, this request for injunctive relief stems from a belief that at some point in the future someone at Parsons will experience discrimination. Such a belief is too speculative and hypothetical to satisfy the injury-in-fact requirement of constitutional standing. *See Pinckney v. Carroll*, No. 18 Civ. 12198, 2019 WL 6619484, at *4 (S.D.N.Y. Dec. 4, 2019) (holding plaintiff lacks standing to seek injunctive relief where plaintiff sought an injunction to ensure reasonable accommodation to disabled individuals in the future). Second, the requested relief would not

---

[1] Prudential standing is not considered because ADA actions are not subject to any prudential limitations on standing. *See Fulton v. Goord*, 591 F.3d 37, 42 (2d Cir. 2009); *accord Pinckney v. Carroll*, No. 18 Civ. 12198, 2019 WL 6619484, at *3 (S.D.N.Y. Dec. 4, 2019).

redress any alleged injury suffered by Plaintiff. *See Keepers*, 807 F.3d at 39, 42-43 (recognizing that one purpose of standing is to ensure that the plaintiff is the appropriate one to bring a claim).

Plaintiff's ADA claim is dismissed without prejudice for lack of subject matter jurisdiction. Where a plaintiff lacks standing to bring a claim, the claim must be dismissed without prejudice because, without jurisdiction, the court lacks the power to dismiss with prejudice. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016); *accord Balde v. Nielsen*, No. 18 Civ. 9597, 2019 WL 2387794, at *3 (S.D.N.Y. June 6, 2019).

### B. Rehabilitation Act Claim

#### 1. Legal Framework

"Section 504 of the [Rehabilitation Act] prohibits a program or activity receiving federal funds from excluding or discriminating against persons based on disability." *Biondo v. Kaleida Health*, 935 F.3d 68, 73 (2d Cir. 2019) (citing 29 U.S.C. § 794(a)). Claims under the Rehabilitation Act are analyzed under the *McDonnell Douglas* burden-shifting framework. *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48-49 (2d Cir. 2002), *superseded by statute on other grounds*, ADA Amendments of 2008, Pub. L. No. 110-325, 122 Stat. 3553; *see also Jackson v. N.Y.C Dep't of Educ.,* 768 Fed. App'x 16, 17 (2d Cir. 2019) (summary order); *Modica v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 4834, 2021 WL 3408587, at *5 (S.D.N.Y. Aug. 4, 2021). This framework requires a plaintiff in the first instance to establish a prima facie case of discrimination. *Lively v. WAFRA Inv. Advisory Grp.*, 6 F. 4th 293, 302 n.3 (2d Cir. 2021). To establish a violation of the Rehabilitation Act, a plaintiff must show that he (1) is disabled as defined by the Rehabilitation Act, (2) is "otherwise qualified" to participate in the offered activity or benefit, (3) was excluded from such participation solely by reason of disability and (4) was denied participation in a program receiving federal funds. *See Biondo*, 935

F.3d at 73.  Plaintiff's burden of establishing a prima facie case is minimal.  *McFarlane v. Chao*, No. 04 Civ. 4871, 2007 WL 1017604, *1 (S.D.N.Y. Mar. 30, 2007) (recognizing minimal burden for prima facie case for Rehabilitation Act discrimination claims); *accord Hatch v. Brennan*, 792 Fed. App'x 875, 878 (2d Cir. 2019) (summary order).

If a plaintiff establishes a prima facie case, a presumption of discriminatory intent arises and "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse action."  *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019); *accord Lively*, 6 F. 4th at 302 n.3.  If a defendant meets its burden, the presumption drops out of the analysis and the plaintiff may rebut defendant by showing the defendant's determination was the result of discrimination.  *Lenzi*, 944 F.3d at 107-108; *accord Lively*, 6 F. 4th at 302 n.3.  For Rehabilitation Act discrimination claims outside of the employment context, a plaintiff must introduce evidence sufficient to permit a fact finder to conclude that the plaintiff was discriminated against *solely* because of the plaintiff's disability.  *Natofsky v. City of New York*, 921 F.3d 337, 345-46 (2d Cir. 2019); *see Reg'l Econ. Cmty. Action Program*, 294 F.3d at 35 (2d Cir. 2002) (applying the "solely by reason of" causation standard to a housing discrimination Rehabilitation Act case).

## 2.  Analysis of Rehabilitation Act Claim

For the reasons stated below, Defendant's motion for summary judgment on the Rehabilitation Act claim is granted.  Even assuming that Plaintiff has made the minimal showing to establish a prima facie case of discrimination under the Rehabilitation Act, Defendant has shown evidence of non-discriminatory reasons for its conduct of conferring a degree, awarding Plaintiff a C+ grade and refusing to extend the deadline for Plaintiff's thesis.  The same evidence shows that no reasonable jury could conclude that Plaintiff's mental health was the *sole* motivation for Defendant's conduct.  Undisputed evidence shows that Plaintiff failed to complete

6

his course work, failed to complete his thesis, and had a hostile and adversarial relationship with the TD program and much of its faculty -- all of which provided ample reason for Defendant to deny Plaintiff's request to participate for a third year in the two-year degree program, award him a C+ in his two thesis courses and grant him a degree without a thesis.

The TD Program is a two-year degree program culminating in the receipt of a Master of Fine Arts degree.  The second year of the program is largely focused on creating a thesis.  Three required courses in the spring semester were the "Thesis Project," a thesis seminar and a third seminar called "Intensive 3: Charrette." Plaintiff repeatedly sought exceptions and special permissions, including a request for an alternative to the required Intensive seminar, which was denied.  He intentionally skipped two of the four days of the Intensive seminar.  He admits that his absence was disruptive to the class and might cause him to fail the course.  By the conclusion of four semesters, Plaintiff had three grades of Incomplete including for his thesis and one of the thesis seminars.

Plaintiff's relationship with the TD graduate program and its faculty appears to have been adversarial.  He made audio recordings of his conversations with professors and staff, including the professor who taught the Intensive seminar; a second professor, who was his thesis advisor, the TD Program Director and the wife of the Intensive seminar professor; and his academic advisor.  He perceived both his seminar professor and thesis advisor as hostile.  In February 2018, he proposed an analysis of his own degree program (the TD Program) as his revised thesis topic, which his thesis advisor informed him was inappropriate.  In March 2018, Plaintiff did not make a mid-semester thesis presentation because he was in the process of changing his topic and presented instead on another topic.

In May 2018, at the end of his fourth semester when his thesis was supposed to be

finished, Plaintiff presented his thesis to his faculty and cohort, with his first slide being an email to his thesis advisor stating that he needed to explore additional subjects over the summer and possibly the fall and that he had a "hard time discussing that with you because [he is] afraid of you." The thesis advisor had previously encouraged him to meet the degree requirements and graduate in May, which was the usual end of the two-year program. Plaintiff's thesis presentation included private email communications Plaintiff had had with other faculty members and evoked strong reactions from several faculty members.

After Plaintiff's fourth semester in the program, Plaintiff left New York City without an approved plan for completing his thesis and without receiving any extension. On May 30, 2018, Plaintiff posted a message on the TD alumni message board stating in part that "the thesis structure of the [TD] Graduate Program is broken [and that students faced] unnecessary standoffs with thesis faculty, whose advice on thesis projects had become increasingly determined by market interests and corporate incentives."

When the Dean became involved in Plaintiff's situation, he declined her request to meet in June 2018 with her, Plaintiff's thesis advisor and another faculty member. Plaintiff stated that he was "traveling internationally this month" and asked to reschedule the meeting to mid-July. When the Dean informed him the meeting could not wait until then, Plaintiff responded that her seemingly "sudden" and "unusual" request made him "anxious," that his travels were challenging and that he would need to get back to her at a time that would work for him, which "may not be this week." He also said that he was "no longer comfortable" meeting with his thesis advisor or the seminar professor, particularly about completing his thesis and earning his degree. The Dean responded on June 16, 2018, and provided a deadline of July 25, 2018, to submit any additional work, which would be evaluated and graded accordingly. Plaintiff responded that he did not agree

to the terms, needed additional time, and "so I intend to maintain status this coming Fall 2018 semester," which a faculty member had told him was an option. The Dean responded that her terms were non-negotiable, and that if he did not agree, his two incomplete grades for his thesis and the seminar would be changed to Cs. In July, Plaintiff met twice with the Dean via videoconference and provided her a two-page document related to his thesis. Because Plaintiff had an incomplete in a third course, the Dean granted him an additional extension to August 25, 2018, to submit any final additional work. The Dean appears to have made the decision that Plaintiff should be graduated despite not having finished his thesis. Plaintiff was given a C+ in both thesis courses and was graduated from the TD Program with an MFA in August 2018. Plaintiff appealed to the Executive Dean of the New School and then to the Provost, both of whom refused to "deconfer" Plaintiff's degree.

These undisputed facts provide ample evidence of a non-discriminatory basis for Defendant's conduct. This evidence satisfies not only the second prong of the *McDonnell Douglas* test, but also shows that no reasonable jury could find that Defendant's alleged perception of Plaintiff's mental health was the *sole* reason for graduating him from the program under the third prong of the test. Defendant asserts in its 56.1 Statement that "Dean Pirone made the pedagogical assessment that more time was not in Plaintiff's best interests [and that] he was unable to properly situate 'his project in the context of the project system it was embedded in.'" Plaintiff disagrees and asserts that "the true reason she would not allow plaintiff continue work on his thesis beyond August 25, 2018 was that she believed that plaintiff had mental health issues that made him a threat" and that Plaintiff's thesis advisor had the same belief which the Dean felt it important to accommodate.

Plaintiff does not present any evidence from which a reasonable jury could find that

Defendants were motivated to act *solely* by his mental health. A person is disabled for purposes of the Rehabilitation Act if that person is regarded as disabled, i.e., having "an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity," provided that the impairment is not transitory and minor. *See* 29 U.S.C. § 705(9)(b) (incorporating the standard in 42 U.S.C. § 12102). The record shows that Plaintiff's thesis advisor and, to a lesser extent, the Dean had concerns about Plaintiff's mental stability. For example, Plaintiff's thesis advisor thought Plaintiff's conduct during his thesis presentation reflected "mental instability" and that Plaintiff "was not in good shape." Plaintiff's thesis advisor also feared for her safety because of Plaintiff's conduct. The thesis advisor suggested to Plaintiff that he consider seeing a therapist. Plaintiff also submits limited evidence that the Dean viewed Plaintiff's situation through the prism of "mental health challenges." However, Plaintiff presents no evidence from which a reasonable jury could find that the reason or motivation for Defendant's conduct was *solely* his mental health, or that the proffered reasons relating to Plaintiff's performance and conduct were pretextual, or that the fundamental facts of Plaintiff's performance and conduct as recited above are factually untrue.

Additionally, Plaintiff has not established that much of Defendant's challenged conduct constitutes discrimination for purposes of the Rehabilitation Act. Defendant, in its memorandum of law in support of its motion for summary judgment, argues persuasively that issuing a grade and awarding a degree cannot be considered a denial of benefits or an adverse action. Plaintiff did not respond to this argument in his memorandum of law in opposition to Defendant's motion for summary judgment, and he does not otherwise offer any support that the awarding of a degree

and a grade higher than expected can constitute discrimination under the Rehabilitation Act.

### C. Breach of Contract Claim

For the reasons stated below, Defendant is granted summary judgment on the breach of contract claim, and Plaintiff's motion is denied.

Under New York Law, a breach of contract requires a plaintiff to establish "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages."[2] *Donohue v. Cuomo*, 980 F.3d 53, 67 (2d Cir. 2020) (internal quotation marks omitted). New York courts recognize an implied contract between a college and its students "such that if a student complies with the terms prescribed by [the college], he or she will obtain the degree which he or she sought." *Clogher v. N.Y. Med. Coll.*, 976 N.Y.S.2d 198, 199 (2d Dep't 2013) (internal quotation marks omitted); *accord Hassan v. Fordham Univ.*, 515 F. Supp. 3d 77, 86 (S.D.N.Y. 2021); *see also Olsson v. Bd. of Higher Educ.*, 402 N.E. 1150, 1153 (N.Y. 1980) ("[I]t has been suggested that there exists an 'implied contract' between [educational] institution[s] and [their] students . . . ."); *Carr v. St. John's Univ.*, 231 N.Y.S.2d 410, 633 (2d Dep't 1962) ("When a student is duly admitted by a private university, secular or religious, there is an implied contract between the student and the university that, if he complies with the terms prescribed by the university, he will obtain the degree which he sought."), *aff'd*, 187 N.E.2d 18 (N.Y. 1962). The parties do not dispute the existence of an implied contract.

Defendant is entitled to summary judgment on the breach of contract claim because, construing the facts in favor of Plaintiff, no reasonable jury could find that Plaintiff adequately

---

[2] The breach of contract claim is reviewed under New York law because both parties' memoranda of law apply New York law. *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009); *accord N.Y. Marine & Gen. Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, 485 F. Supp. 3d 398, 404 n.5 (S.D.N.Y. 2020).

performed his contractual obligations. The undisputed evidence shows that Plaintiff did not uphold his end of the bargain when he failed to produce a thesis, even after receiving extensions lasting several months. Plaintiff admits that he did not submit a written thesis on time, that he was told he would receive a grade of C in his thesis courses if he did not submit new work by the extended deadline, and that he submitted an additional two pages related to his thesis project in July 2018 and no other materials. Implicit in the student-university contractual relationship is that "the student must fulfill [his or her] end of the bargain by satisfying the university's academic requirements and complying with its procedures." *Papelino v. Albany Coll. of Pharm.*, 633 F.3d 81, 93 (2d Cir. 2011) (applying New York law); *accord Doe v. Columbia Univ.*, No. 19 Civ. 5357, 2020 WL 1528545, at *5 (S.D.N.Y. Mar. 31, 2020). Defendant is entitled to summary judgment on that claim, and Plaintiff's motion for summary judgment is denied.

Plaintiff's arguments that Defendant is not entitled to summary judgment are unavailing. First, Plaintiff argues that a failure to meet an academic requirement cannot be a breach of a student's obligation and that a student's only contractual obligation is to pay tuition and comply with disciplinary and other rules. This argument is legally incorrect as a key aspect of a student's obligations under the implied contract is to satisfy the university's academic requirements. *See, e.g.*, *Papelino*, 633 F.3d at 93; *Columbia Univ.*, 2020 WL 1528545, at *5; *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998). Plaintiff cites no case law to the contrary.

Second, Plaintiff argues generally that Defendant breached the implied contract by giving Plaintiff a passing grade when he failed to meet the requirements for earning a passing grade. That theory does not support a breach of contract claim. Plaintiff is arguing that, because he did not perform his end of the contract, Defendant should not have provided him with the benefits of the contract (a passing grade and a degree). Plaintiff points to no case law, nor could he, that a

defendant can be held liable for breach of contract for performing despite a plaintiff's non-performance.

### D.  New York State and City Human Rights Law Claims

The Court declines to exercise supplemental jurisdiction over Plaintiff's New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law Claims ("NYCHRL"). A district court may decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction" and where "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c).  When "a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'" *Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)); *accord Vaughn v. Phx. House N.Y., Inc.*, 957 F.3d 141, 146 (2d Cir. 2020) ("Because the District Court properly dismissed [the federal] claims, the only claims over which it had original jurisdiction, it did not abuse its discretion by declining to exercise supplemental jurisdiction over his [state law] claims.").

Dismissal of the NYSHRL and NYCHRL claims is warranted because all federal claims have been dismissed before trial and those claims present novel and complex issues of state law. As to the NYSHRL claim, it is unclear what causation standard applies to such claims.  *See Ragin v. Riverbay*, No. 20-2233, 2021 WL 4057196, at *3 n.2 (2d Cir. Sept. 7, 2021) (summary order) ("[W]e have not yet determined whether 'but for' causation is the proper standard for claims of disability discrimination under the NYSHRL or whether, for instance, Title VII's lower 'mixed-motive' test would apply instead, and we decline to do so today."); *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 340 n.22 (S.D.N.Y. 2020) (collecting cases in the NYSHRL retaliation claim context).  As to the NYCHRL claim, there is a paucity of case law addressing

the scope and meaning of the NYCHRL's education exclusion stating that "[t]he provisions of this subdivision as they relate to unlawful discriminatory practices by educational institutions shall not apply to matters that are strictly educational or pedagogic in nature," N.Y.C. Admin. Code § 8-107(4)(f).

## IV.   CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is GRANTED as to Plaintiff's Rehabilitation Act and breach of contract claims, and DENIED without prejudice as to Plaintiff's ADA, NYSHRL and NYCHRL claims. Plaintiff's ADA claim is dismissed without prejudice for want of subject matter jurisdiction. Plaintiff's NYSHRL and NYCHRL claims are DISMISSED without prejudice to their refiling in state court. Defendant's motion for oral argument is DENIED as moot. Plaintiff's motion for summary judgment is DENIED. The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 50, 61, 62, 69 and 100 and close the case.

Dated: January 21, 2022
       New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE